ENGLEMAN *v.* THE STATE.

A paper in a cause is filed when it is delivered to the clerk and received by him to be kept with the papers in the cause.

The caption (being the prefatory statement of the clerk upon the record preceding the copy of the indictment,) stated, that the indictment was found at the *October* term, 1846, by certain men " duly impanneled, sworn, and charged as grand jurors in and for the county of *Allen*, at said term." *Held*, that this was sufficiently explicit.

An indictment charged the offence to have been committed on a certain day of a certain month " in the year eighteen hundred and forty-six." It was urged that the indictment was defective in omitting the words " of our Lord" between the words "year" and "eighteen." *Held*, that the objection was not valid.

When a year is mentioned in legislative or judicial proceedings, and no mention is made of any other system of reckoning, the *Christian* calender is understood to be used.

An indictment may contain several counts charging the same transaction, though amounting to a felony, in different modes, in order to meet the proof of the case; and the indictment cannot be quashed for this cause, if it do not appear that different transactions or felonies are charged.

If an indictment contains several counts charging the same larceny in different modes, the defendant cannot, without showing other cause than what appears on the face of the indictment, on motion, compel the prosecutor to elect on which count he will proceed; but the prosecutor may apply the evidence relating to the larceny to whichever count it will sustain; but if, on the trial, the evidence tends to prove distinct larcenies which might be embraced in the indictment, the prosecutor will be compelled to elect as to which of the larcenies he will rely upon on the trial, and confine his evidence to that.

The indictment charged a larceny of certain county orders, and described them as follows: " five county orders drawn by the auditor of the county of *Allen*, in the state of *Indiana*, on the treasurer of said *Allen* county,

May Term,
1850.

ENGLEMAN
v.
THE STATE.

one of these county orders being of the denomination of 87 dollars and 27 cents, and of the value of 25 dollars; one other of said county orders," &c., (describing each order after the manner of the first,) "of the personal goods," &c., "then and there feloniously did take and carry away contrary," &c. *Held*, that the description was sufficient, and that the larceny was sufficiently described without using the word "steal."

' The fact that stolen property is found upon the person of the defendant can always be given in evidence in a prosecution for the larceny against him; but the strength of the presumption which it raises against the accused depends upon all the circumstances surrounding the case.

In a criminal prosecution, the defendant cannot prove particular acts of his good conduct, neither can the state prove particular acts of his bad conduct, but proof of general character is alone admissible.

*Friday,*
*May 31,*

ERROR to the *Kosciusko* Circuit Court.

PERKINS, J.—This was an indictment, found in the *Allen* Circuit Court, against *Engleman,* for larceny. Upon application by the defendant, a change of venue was granted to the *Kosciusko* Circuit Court. The cause was there tried, and the defendant convicted. He prosecuted a writ of error to this Court, and assigns numerous objections to the proceedings against him below.

He contends that the Court had no jurisdiction of the cause, because the indictment does not appear to have been filed in the *Allen* Circuit Court. We understand a paper in a cause to be filed when it is delivered to the clerk, and received by him, to be kept with the papers in the cause. Bouv. Dic., Tit. *"File."* In the case before us, the transcript made by the clerk of the *Allen* Circuit Court states, that, on a certain day of a certain term of said Court, the grand jury "presented in these words and figures following, to-wit;" then follows a copy of the indictment. It further shows that process was issued against the defendant; that he appeared, "and it being demanded of him how he would acquit himself of the charges," &c., "for plea thereto said he was not guilty as he stood charged in the indictment aforesaid;" that he entered into a recognizance for his appearance at a subsequent term, to which the cause was continued; that, at that term, he applied for, and obtained, a change of venue to the *Kosciusko* Circuit Court; to which Court, the clerk of the *Allen* Circuit Court was ordered to transmit the

papers in the cause, with a transcript, &c.; and the record made by the clerk of the *Kosciusko* Circuit Court states that the proceedings, &c., in the *Allen*, including the original indictment which is specially mentioned, were filed in the *Kosciusko*, Circuit Court; and there is no objection that all the papers belonging to the cause were not filed there. We think these statements sufficiently show that the indictment had been delivered to, and received in his official capacity by, the clerk of the *Allen* Circuit Court.

Next follows a series of objections to the indictment and its caption. It is said that the caption (being the prefatory statement of the clerk upon the record preceding the copy of the indictment,) does not show that the indictment was found at the term of the Court at which the grand jury was sworn. It states that the indictment was found at the *October* term, 1846, by certain men " duly impanneled, sworn, and charged as grand jurors in and for the county of *Allen*, at the said term." We think this sufficiently explicit. And here we may notice a supposed discrepancy in the decisions in *The State* v. *Hopkins*, 7 Blackf. 494, and *The State* v. *Paine, May* term, 1848 (1). The difference is in the facts of the cases, not in the principle of the decisions. In the former case the indictment, as returned into Court by the grand jury, commenced with the words " The grand jury," &c. In the latter, it commenced with the words " State of *Indiana*," &c., " *Hendricks* Circuit Court, *October* term," &c. " The grand jurors," &c. This fact, borne in mind, will dissipate the supposed conflict on this point.

The indictment charges the offence to have been committed on a certain day of a certain month " in the year eighteen hundred and forty-six," and it is insisted that it is fatally defective in omitting the words " of our Lord" between the words " year" and " eighteen," and a decision in a neighboring state is cited. It is a fact, historically known, that *Christian* nations have generally adopted the *Gregorian* calender, numbering the years from the birth of *Christ*. This is a *Christian* state, and has adopt-

ed the same; and when a year is mentioned in our legislative or judicial proceedings, and no mention is made of the *Jewish, Mahometan,* or other system of reckoning time, all understand the *Christian* calender to be used. For example, the constitution of the *United States* declares that the importation of certain persons shall not be prohibited before the year eighteen hundred and eight; and that of *Indiana* declares that *Corydon* shall be the seat of government till eighteen hundred and twenty-five. These are important documents, demanding the greatest certainty and precision of statement; yet, who ever heard of any person contending that the year of the union was meant in one of these instances, and the year of the state in the other? To hold an indictment bad for the omission of the words in question, can never be necessary to the safety of any of the rights of the accused, and would tend to bring odium on judicial proceedings. We think the objection not valid.

The indictment consists of several counts, each charging a larceny, and hence, it is insisted that it should have been quashed. It is proper to insert several counts in an indictment, charging the same transaction, though amounting to a felony, in different modes, in order to meet the proofs in the case; and if it do not appear that different transactions or felonies are charged, the indictment should not be quashed for this cause. In the present case it does not appear that different transactions, or independent offences, are charged.

The defendant, then, before going into trial, and without showing any cause other than appeared upon the face of the indictment, moved that the prosecutor be required to elect upon which count of the same he would proceed, but the Court overruled the motion. If the indictment charged but one transaction in different modes, the prosecutor had a right to give the evidence relating to that transaction, and apply it to whichever count of the indictment it would sustain; and as it did not appear, at the time the motion was made, that different transactions were charged, the Court did right in refusing it. If, when

the prosecutor brought forward his evidence, it tended to prove distinct larcenies which might be embraced by the charges in the indictment, the prosecutor might then have been compelled to elect as to which of the larcenies he would rely upon on the trial, and to confine his evidence to that. See 2 Russ. on Cr. 696.

A witness was alleged to be absent, and a motion was made and refused for a continuance of the cause to the next term of the Court. We think the affidavit on which the motion was predicated, supposing the matter alleged as susceptible of proof by the witness to be of importance, insufficient to justify a continuance to a succeeding term. It might have, for a day or two, had such an indulgence been asked and an attachment for the witness prayed; though of this we cannot judge, as neither the time when, nor the Court or term to which, the witness had been subpœnaed, is stated. It is affirmed that "he had been subpœnaed in the case," but whether at one of the several terms at which the cause had been pending in *Allen* county, or to that of the trial in *Kosciusko*, is not shown.

The charge in the indictment is a larceny of certain county orders, and it is urged that the description of those orders is not sufficiently particular. The first and one of the most general of the counts in the indictment describes them as follows: that the said *Charles Engleman*, late, &c., on, &c., at, &c., "five county orders, drawn by the auditor of the county of *Allen*, in the state of *Indiana*, on the treasurer of said *Allen* county, one of these county orders being of the denomination of 87 dollars and 27 cents, and of the value of 25 dollars; one other of said county orders, being of the denomination," &c., (describing each remaining order after the manner of the first,) "of the personal goods of," &c., "then and there being found, then and there feloniously did take and carry away, contrary," &c. Other counts give the dates of the acceptances of the orders, the names of the payees, the name of the treasurer, &c., but we think the count we have copied sufficient. These orders, hav-

ing been taken from the possession of the owners, could not be expected to be described by them with great particularity; and in prosecutions for the larceny of property of this character, were it the requisition generally, that the stolen property must be described with the same completeness required in prosecutions for forgery, few could be sustained. That a description as general as that in the above count is sufficient, *The Commonwealth* v. *Richards*, 1 Mass. R. 337, establishes. That was a prosecution for the larceny of a bank note. Per *Sedgwick*, J., "The indictment alleges that the defendant stole a bank note of the value of 10 dollars, of the goods, chattels, &c. This is a sufficient allegation of property and value, and in my opinion as particular a description as the law requires." *Dana*, C. J., and *Thatcher*, J., and *Strong*, J., concurred. The count under consideration omits the word "steal," and this is objected to; but it charges a felonious taking and carrying away of the property, which is larceny.

Certain papers purporting to be *Allen* county orders were read in evidence to the jury, and it is objected that there was not sufficient proof of their genuineness to justify their being so read. The record does not purport to contain all the evidence given, and hence we cannot say there is any force in this objection.

The Court instructed the jury as follows:

"If the jury believe, from the evidence, that the defendant was in possession of the orders of the *Townlys*, or any part of them, as charged in the indictment, within a period of four or five months after the time they are alleged to have been stolen, and that they were stolen on or about the time alleged, and the defendant has failed to show how he came by them, he having it in his power to explain his possession if it was an honest one, such possession is a circumstance from which the jury are authorized to raise a presumption, in connection with the other circumstances in the case, to weigh against the defendant."

This instruction we think unobjectionable. The fact

that stolen property is found upon a person may always be given in evidence in a prosecution for the larceny against him, and must always be consistent with his guilt; but the strength of the presumption which it raises against the accused, or whether any at all, depends upon the length of time that may have elapsed between the larceny and the finding, considered in connection with the character of the property, the explanations, or the want of them, by the defendant—indeed, all the circumstances surrounding the transaction.   See the cases collected upon this point in  note 325 to page 169, of Vol. 1 of Phil. Ev. by Cowen and Hill.   No certain lapse of time can be designated, applicable alike to all cases, as raising, or otherwise, the presumption of guilt, from the possession of stolen goods.

But one more point remains to be considered.   On the trial the defendant called witnesses to his general good character.   The state was permitted, on cross examination, over the objection of the defendant, to prove particular acts of his bad conduct.   This was wrong.   The defendant could not prove particular acts of good, nor the state of his bad, conduct.   1 Chit. Cr. L. 574.—2 Russ. on Cr. 704.—1 Greenl. on Ev. 125.—1 Phil. Ev. *supra*, 177, and note 343.   *Redman, et al.*, v. *The State*, 1 Blackf. 96.

The judgment of the Court below must be reversed.

*Per Curiam.*—The judgment is reversed.

*J. G. Walpole, D. H. Colerick*, and *R. L. Walpole*, for the plaintiff.

*D. Wallace*, for the state.