Bruce *et al. v.* The State.

No. 10,487.

BRUCE ET AL. *v.* THE STATE.

CRIMINAL LAW.—*Bill of Exceptions.—Practice.—Statute Construed.*—Under a fair construction of section 1847, R. S. 1881, errors of law occurring at the trial, in a criminal cause, must be excepted to at the time the decision is made, and exceptions thus taken will constitute a part of the record, if they are shown by a bill or bills of exceptions, signed by the judge and filed by the clerk at or before the time the judgment is rendered, or within such time thereafter as the court may allow, not exceeding sixty days.

SAME.—*Public Nuisance.—Failure of Evidence.—New Trial.—Error.—Supreme Court.*—Where the defendants are found guilty of maintaining a public nuisance, as the owners, by descent, of a certain mill-dam, and there is a total failure of evidence to show that they, or either of them, had done any act, in relation to or in connection with the dam, it is error to refuse a new trial, for which the Supreme Court will reverse the judgment.

From the Pulaski Circuit Court.

*W. Spangler* and *J. C. Nye,* for appellants.

*D. P. Baldwin,* Attorney General, and *W. W. Thornton,* for the State.

HOWK, J.—This was a prosecution, by affidavit and information, against the appellants, Jerome T. Bruce and Nancy J. Bruce, and six other named defendants, for the unlawful erection, continuance and maintenance of a public nuisance. On arraignment and plea of not guilty, the issues joined were tried by a jury, and a verdict was returned finding the appellants guilty as charged, and assessing their punishment at a fine in the sum of $1.00; and finding further that the other defendants were not guilty. Over the appellants' motion for a new trial, and their exception saved, the court rendered judgment against them for the fine assessed and costs, and for the abatement of the nuisance.

In this court the appellants have assigned the following errors:

1. The trial court erred in overruling their motion for a new trial; and,

2. Error of the trial court in rendering judgment on the verdict for the abatement of the nuisance.

We will consider and pass upon these alleged errors in their order.

1. In their motion for a new trial, the appellants have assigned as causes therefor a number of alleged errors of law occurring at the trial and excepted to; and these errors of law they have attempted to save and present for the consideration of this court, by divers bills of exceptions appearing in the record. It appears from the record that the cause was tried and the verdict returned at the January term, 1882, of the court below; and that afterwards, at the same term, the appellants filed their written motion for a new trial. No action was then had or ruling made by the court on appellants' motion; and no time was asked for or given beyond the term in which to prepare and file any bill of exceptions. At the next March term, 1882, of the court, the appellants' motion for a new trial was overruled, and to this ruling they, and each of them, then excepted, and were given sixty days in which to file their bills of exceptions; and the cause was then continued until the next term of the court "for judgment and further proceedings." At its June term, 1882, the court rendered judgment against the appellants for the fine and costs, and for the abatement of the nuisance. On May 15th, 1882, in vacation, the appellants filed their bills of exceptions, within the time allowed by the court at its March term, 1882.

Upon this state of the record the counsel for the State claim that the errors of law occurring at the trial, and relied upon by appellants for the reversal of the judgment, were not properly saved in the record at the proper time, either by bills of exceptions or by orders of the court. Indeed, the counsel of the State insist that none of the questions, intended and attempted to be saved in and by the bills of exceptions appearing in the record, in relation to the competency of a juror, or to the admission or exclusion of evidence, or to the instructions given or refused, were so saved and presented thereby as that

they can be considered or decided by this court.   In other words, the counsel claim that inasmuch as no time was asked for or given by the court at the term of the trial for reducing the appellants' exceptions, then taken, to writing, such exceptions are not properly or legally shown by the bills of exceptions, filed long afterwards, upon leave granted at a term subsequent to the trial term.  If the counsel for the State are right in their view of the record, the only question therein saved and presented for decision is the sufficiency of the evidence to sustain the verdict.

In section 1847, R. S. 1881, in force at the time, it is provided as follows: "All bills of exceptions, in a criminal prosecution, must be made out and presented to the judge at the time of the trial, or within such time thereafter as the judge may allow, not exceeding sixty days from the time judgment is rendered; and they must be signed by the judge and filed by the clerk.   The exceptions must be taken at the time of the trial."

The only material difference between this section of the statute and section 120 of the criminal code of 1852, which latter section was in force until September 19th, 1881, is this, that, under the old code, bills of exceptions in a criminal cause were required to "be made out and presented to the judge at the time of the trial, or within such time thereafter *during the term,* as the court may allow"; while, by the law now in force, bills of exceptions in such a case must be made out and presented at the time of the trial, or within such time thereafter as the judge may allow, "not exceeding sixty days from the time the judgment is rendered."   There is this further difference, that, under the old law, the exception must be taken "at the time of the *decision*"; while, by the law now in force, "the exception must be taken at the time of the *trial.*"  2 R. S. 1876, p. 405.

The precise point made by the counsel for the State, in the case at bar, in relation to the bills of exceptions appearing in the record, was considered by this court in the case of *Jenks*

v. *State*, 39 Ind. 1. In the case cited it appeared that at the December term, 1870, of the court below, Jenks moved the court upon affidavits for a postponement of the trial on account of the absence of a material witness, which motion was overruled, and Jenks excepted. The trial then proceeded, resulting in a verdict of guilty; and Jenks then filed a motion for a new trial. This motion was taken under advisement, and was not decided by the court until its September term, 1871, at which term the motion was overruled and judgment rendered on the verdict. During such September term bills of exceptions containing the affidavits and motion for the postponement of the trial, at the preceding December term, and the evidence given on the trial, were signed by the judge and filed by the clerk as parts of the record of the cause. On appeal to this court it was earnestly insisted by counsel for the State that the bill of exceptions, containing the affidavits and motion for the postponement of the trial, and the ruling of the court thereon, did not constitute a proper part of the record, and that, therefore, no question was presented, in relation to the court's refusal to postpone the trial, for the decision of this court. This point was very carefully considered by the court in the case cited, and a construction was given to the provisions of section 120 of the criminal code of 1852, in relation to the time of signing and filing bills of exceptions in a criminal prosecution. The court there said:

" We have, upon very mature and thoughtful consideration, come to the conclusion that the bill of exceptions is in the record. Until the motion for the new trial was disposed of, the cause was pending in court, and the parties were presumed to be in court, and in this case they were, in point of fact, present in court. The proceedings were *in fieri* until judgment was rendered. We are of the opinion that the word trial, as used in the above section, was not used in its limited and restricted sense, but in a general sense, and includes all the steps taken in the cause from the submission of the cause to the jury to the rendition of the judgment. If we were to

hold otherwise, then we would be compelled to hold that the bill of exceptions embodying the evidence did not constitute a part of the record; for if the word trial only applies to the investigation of the facts, then the bill of exceptions must have been signed by the judge, and filed by the clerk, at the September term, 1870, when the evidence was heard and the verdict was rendered. * * * We think the section under examination should receive a liberal and beneficial construction, and not a strict, technical, and restricted one."

It will be observed that the construction thus placed upon the provisions of section 120 of the criminal code of 1852 is applicable as well at least to the language used in the above quoted section 1847, R. S. 1881, now in force. If, therefore, the rule declared by this court, in the case last cited, is adhered to in the case at bar, it will settle the question under consideration adversely to the position contended for by the counsel for the State; and it must be held, accordingly, that all the bills of exceptions in this case are properly in the record, and that the alleged errors of law, occurring at the trial, were duly saved in the record by such bills, and must be considered and determined. In support of their position the attorneys for the State have cited a number of the decisions of this court, in civil cases, in which it has been held, and correctly so, we think, that errors of law occurring at the trial of a civil cause can not be made a part of the record by a bill of exceptions filed after the trial term, unless it is shown affirmatively by the record that time was given beyond the term for the filing of such bill of exceptions. *Lee* v. *Hills*, 66 Ind. 474; *Sohn* v. *Marion, etc., G. R. Co.*, 73 Ind. 77; *Backus* v. *Gallentine*, 76 Ind. 367; *Supreme Lodge, etc.,* v. *Johnson*, 78 Ind. 110.

But it must be borne in mind, that, in relation to exceptions and bills of exceptions, the provisions of the criminal code are and always have been widely different from the requirements of the civil code. Sections 343 to 346 of civil code of 1852; sections 626 to 629, R. S. 1881. This differ-

ence is amply sufficient, we think, to account for the apparent difference between the rule applicable to such subject in civil causes, as declared in the cases last cited, and the rule governing the same subject in criminal prosecutions, as enunciated in *Jenks* v. *State, supra.* We are of the opinion that, under a fair and reasonable construction of section 1847, R. S. 1881, errors of law occurring at the trial, in a criminal prosecution, must be excepted to at the time the decision is made, upon the trial of the cause by the court or jury, and that the exceptions thus taken will constitute a part of the record if they are shown by a bill or bills of exceptions, signed by the judge and filed by the clerk at or before the time the judgment is rendered, or within such time thereafter as the court may allow, not exceeding sixty days. It follows, therefore, that as the bills of exceptions in this case were signed and filed within the time allowed by the court, not exceeding sixty days, and before the rendition of judgment, they are properly in the record; and that, as these bills show that the appellant's exceptions to the rulings of the court were duly taken at the proper time, the errors of law complained of are properly saved thereby and presented for the consideration and decision of this court.

The affidavit and information charged in substance that the appellants and six other persons, on and before the 1st day of March, 1881, and ever since, unlawfully, wrongfully and injuriously erected, continued and maintained a certain public nuisance, to wit, a certain mill-dam, on, over and across a certain stream of water, commonly called "Quigley's Branch," describing the location of such dam, causing the water to flow back, and stating at length how and in what manner the dam became and was injurious to the public health. The sufficiency of the affidavit and information is not called in question in any manner, in this court, and the averments thereof need not be more fully stated. The offence charged is defined, and its punishment is prescribed, in section 2067, R. S. 1881, as follows: "Whoever builds, erects, continues or keeps up any dam or other obstruction to any stream of

water, and thereby produces stagnant water which is mani-
festly injurious to the public health and safety, shall be fined
not more than five hundred dollars nor less than ten dollars."

The substantial facts, shown by the evidence, were briefly
as follows: The mill-dam complained of as a nuisance was
erected about twenty-five years or more before this prosecu-
tion was commenced, by one Stephen Bruce, and remained
his property until his death, in January, 1881. At his death
the said Stephen Bruce left surviving him Nancy Bruce, his
widow, and Jerome J. Bruce, Melissa Bruce, Mary Bruce,.
Julia Bruce and Harriet Bruce, his children, as his heirs at
law. On the 1st day of March, 1881, Jerome J. Bruce was
appointed and qualified as administrator of the estate of Stephen
Bruce, deceased. The widow and children of the decedent were
all made defendants to this prosecution. Since March, 1881,.
John Peifer has rented the property in question, but from
whom he rented the evidence failed to show. There was no
evidence introduced, so far as the record shows, which tended
to prove that the defendants, or either of them, erected, con-
tinued or maintained the dam complained of. They were the
widow and children of Stephen Bruce, who built the dam and
maintained it for a quarter of a century; and the evidence
showed that, during that time, " there never was a suit brought
of any kind against Stephen Bruce, in relation to the dam or
pond." Upon the death of Stephen, the defendants, as his
widow and children, seem to have inherited the dam in ques-
tion, and, so far as the evidence shows, they had no connec-
tion with the dam in any other manner. Jerome J. Bruce
testified as follows: " I always thought that I had a right to
keep the dam up and in repair. All I ever did, in relation to
the dam, was done in the capacity of administrator of the estate
of said Stephen Bruce. I did not think that I was doing
what I had no right to do." But neither he nor any other
witness testified to any act done by him, or by any of the de-
fendants, in relation to or in connection with the dam com-
plained of as a nuisance.

We are of opinion, therefore, that the verdict of the jury was not sustained by sufficient legal evidence, and that, for this cause, a new trial ought to have been granted.

Several other alleged errors are discussed by appellants' counsel, but as none of them will probably occur on another trial of this cause, we need not extend this opinion in their examination and decision.

The judgment is reversed, and the cause remanded, with instructions to sustain the motion for a new trial.